UNITED STATES DISTRICT COURT
SOUTNERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MASTERS PHARMACEUTICAL, INC.** | : | Case No.: 1:14-cv-551 |
| | : | |
| **Plaintiff,** | : | Judge Michael R. Barrett |
| | : | |
| vs. | : | **PLAINTIFF'S** |
| | : | **MEMORANDUM IN** |
| **DEVOS, LTD., d/b/a GUARANTEED** | : | **OPPOSITION TO MOTION** |
| **RETURNS** | : | **FOR JUDGMENT** |
| | : | **ON THE PLEADINGS** |
| **Defendant.** | : | |
| | : | |

Plaintiff Masters Pharmaceutical, Inc. ("Masters"), through its counsel, opposes the Motion for Judgment on the Pleadings filed by Defendant Devos, Ltd, d/b/a Guaranteed Returns ("Devos"). Once again, Devos attempts to avoid its clear liability in this matter by relying on a faulty reading of Plaintiff's Amended Complaint and inferring the existence of disputed facts in its favor to argue that Masters cannot succeed on its claims. But, even a cursory reading of the Amended Complaint demonstrates that Masters has alleged sufficient facts to sustain all of its claims. Accordingly, Devos' Motion must be overruled.

I.   **Standard of Review**

To survive a Motion for Judgment on the Pleadings filed pursuant to Fed.R.Civ.P. 12(c), a plaintiff's complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[1] Detailed factual allegations are not required.[2] Instead, the complaint must merely give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."[3] The relief requested must be

---

[1] Fed.R.Civ.P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[2] Id.
[3] Id.

"plausible on its face."[4] The complaint will survive "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."[6] And, of course, all the factual allegations in the complaint must be construed in the plaintiff's favor and accepted as true.[7]

As set forth below, Masters' Amended Complaint easily satisfies the limited burden Masters bears at this stage of the proceeding.

## II. Argument

### A. *Introduction*

The gravamen of Masters' Amended Complaint is that, rather pay Masters the refunds actually generated by the return of Masters' products, Devos secretly placed Masters' products in undifferentiated "batches" with products belonging to Devos' other customers, and then paid Masters only a proportionate share of the entire batch all the while overcharging for its services and deducting hidden fees paid to third parties. Devos concedes that these facts are essentially true; Devos concedes that it did not trace Masters' products through the return process, concedes that it does not know the amounts of the refunds actually generated by Masters' products, concedes that it paid Masters a proportionate share of a larger batch of products, not the actual refunds generated by its products, and that its batching process involves significant risk to the participants, including Masters. Alone, these undisputed facts support each of Masters'

---

[4] Id at 570.
[5] Id.
[6] *16630 Southfield Ltd. P'ship v. Flagstar Bank*, 727 F.3d, 502, 504 (6th Cir. 2013).
[7] *See, Bell Atlantic Corp.*, 550 U.S. at 570; *Express Energy Servs. Operating L.P. v. Hall Drilling, Inc.*, 2014 U.S. Dist. LEXIS 94457 at *5.

2

claims. The reasonable inferences that can be drawn from these facts make Masters' case even more compelling.

### B. *Masters Has Pled Sufficient Facts to Support its Breach of Contract Claims.*

Rather than acknowledge that Masters has sufficiently pled its claims, Devos posits a set of facts that it has not proven and that, even if they did exist, would not compel judgment in its favor. For example, in arguing for dismissal of Masters' Breach of Contract claim, Devos complains that Masters has not alleged that Devos breached the agreement or that Masters suffered resulting damages.[8]

This argument ignores the fact that Masters' Amended Complaint specifically alleges that Devos agreed to pay Masters the Estimated Return Value ("ERV") of *its products* but, instead, paid Masters a proportionate share of the ERV of an undifferentiated "batch" of products belonging to Masters and Devos' other customers.[9] The Amended Complaint also alleges that, by using this undisclosed batching process, Devos forced Masters to unwittingly assume the risk that products belonging to Devos' other customers would generate lower than anticipated ERV's and, therefore, that Masters would (and, in fact, did) receive less than the full value of its products.[10] The Amended Complaint specifically alleges that Masters incurred nearly $1.4 million in damages as a direct result of Devos' use of the batching process in violation of the parties' agreement.[11]

---

[8] Devos' Memorandum in Support of Motion for Judgment on the Pleadings ("Memo in Support") at pp. 6-7.
[9] *See generally,* Amended Complaint at ¶¶11-31, 50-58.
[10] Id.
[11] Id.

Devos complains that the Amended Complaint does not allege "how Devos was in any way responsible for [Masters'] unmet expectations."[12] Admittedly, it will be impossible for either party to definitively establish *why* the batches of product Devos created generated so much less than Devos estimated they would.[13]  But, rather than expose a deficiency in Masters' pleadings, this fact implicates the batching process itself and Devos' entire business model.  Had Devos not batched Masters' products with others and failed to investigate the massive shortfall generated by those batches, the parties might be in a position to establish the root cause of Masters' "unmet expectations."[14]  And, had Devos disclosed to Masters the risks inherent in its business model, rather than falsely claiming that Masters would receive the refunds actually generated by its products, then Masters could have assessed those risks before choosing to utilize Devos' services.  But, having done neither, Devos is hardly in a position to complain that Masters cannot now establish precisely why it was paid only half of what it expected.[15]

Devos also either misapprehends or intentionally mischaracterizes Masters' other breach of contract claim.  In Count Three, Masters alleges both that Devos paid itself an excessive fee, and paid certain third-parties "administrative fees" from refunds

---

[12] Memo in Support at p. 8.
[13] As set forth in the Amended Complaint, Masters also alleges that Devos breached the parties' agreement when it failed to investigate the reasons why Masters' product failed to generate the expected ERV. Amended Complaint at ¶¶27, 53, 57.  Had Devos done so, it might now be possible to determine exactly why the losses occurred.
[14] Of course, had Devos calculated its fees based the actual refunds generated as it promised Devos would have had an incentive to investigate these shortfalls.  Devos now concedes that, in fact, its fees were based on the ERV which likely explains why it took no action to determine why the refunds were so much less than anticipated.
[15] The undisputed facts do lead to several reasonable inferences that would explain the shortfall.  For example, because Devos only received a fee for products it deemed returnable, Devos had a clear incentive to include nonreturnable product in its batches.  This practice would drive down the total refund paid for the entire batch, and would result in customers like Masters receiving less than they were entitled to while Devos received more.

4

belonging to Masters. Per the parties' agreement, Devos' fee was to be based on the actual refunds received. Instead, Devos now admits that it calculated its fees as a percentage of the ERV, which was nearly twice as much as the actual refunds paid to Masters. Moreover, Devos represented that its fees were "all-inclusive." Discovery has now revealed that Devos paid "administrative fees" to third-parties without disclosing those payments to Masters. Those administrative fees further reduced the amounts ultimately paid to Masters.[16]

Devos claims it "had no control" over the payment of administrative fees as if that were a valid defense.[17] Nonsense -- Devos could have deducted the administrative fees from the "all inclusive fee" it charged Masters. By doing so, it would have kept its promise that it had "no hidden fees." By failing to do so, Devos breached its contract with Masters.

      C.    *Masters Breach of Bailment Claim is Valid Under Ohio Law.*

Devos argues that Masters cannot succeed on its bailment claims because Devos never intended to return Masters' product. While most bailments do require the return of the bailor's property, Ohio has long recognized the concepts of "bailment for sale" or bailments in which the bailee takes possession of the property for the purpose of transferring it to a third party for money rather than returning the property to the bailor.[18] Similarly, a "mutual benefit" bailment, or a "bailment for hire" is one in which the "bailment is a mere incident to the performance of services for which the bailee receives compensation or to the conduct of a business from which the bailee derives

---

[16] These claims apply not only to the 22 batches of products identified on Exhibit A attached to the Amended Complaint, but also to the numerous batches Devos handled for Masters that are not specifically identified in the Amended Complaint. For this reason, the amount of damages Masters sustained as a result of these practices exceeds the fees as reflected on Exhibit A.
[17] Memo in Support at p. 9.
[18] *R. Carrillo & Co. v. McAfee Bros. Furniture Co.,* (1932), 42 Ohio App. 259.

profit."[19]  Generally, a bailment is any arrangement in which possession, but not title, of property is passed from one party to the other for a specific agreed-upon purpose:

> In addition, a bailment may be established where an object is delivered to another so the recipient may perform certain work on it. The deposit of a commodity for handling, processing, reconditioning, or shipment is a bailment. Accordingly, a bailment results from the delivery of personal property to another for a specific purpose such as repairs. Transactions included in the law of bailment include a bailment of incomplete goods for the purpose of having the bailee manufacturer (sic), repair, or otherwise improve them. Similarly, a bailment may be created where an article is delivered to another for the purpose of performing certain services by means of, or connected with, it. Where the owner of a chattel delivers it to another to perform work in respect to or by means of it, the relationship of the parties is that of bailor and bailee where the owner parts with control over the chattel and is that of master and servant where the owner retains control thereof.[20]

In this case, Masters delivered possession of its products to Devos so that Devos could return them to the manufacturer and collect the refund on Masters' behalf.  Once Masters establishes the terms of agreement and proof of delivery, Devos will have the burden to explain why it failed to deliver the refunds to Masters.

D.     *Masters' Negligence Claims are Not Barred.*

Devos next argues that Masters' negligence claims are barred because the parties had an oral contract, and because of the "economic loss doctrine."  However, negligence claims can be asserted alongside breach of contract claims when the duties imposed at law and under the agreement are different.[21]  Because Masters' Amended Complaint alleges that Devos breached its common law duty to advise Masters of its batching process and its attendant risks – a duty clearly outside of Devos' contractual duties –

---

[19] *Hotels Statler Co., Inc. v. Safier* (1921), 103 Ohio St. 638, 643, 134 N.E. 460.
[20] *Vehicle Dev. Corp. PTY v. Livernois Vehicle Dev., LLC*, 995 F.Supp.2d 758, 771, n. 9 (E.D. Mich. 2014) *quoting* 8 C.J.S. Bailments §1.
[21] *Onyx Envtl. Servs., LLC v. Maison*, 407 F.Supp.2d 874, 877 (N.D. Ohio 2005) *citing Davison Fuel & Dock Co. v. Pickands Mather & Co.*. 54 Ohio App.2d 177, 182, 376 N.E.2d 965 (Ohio Ct. App. 1977).

6

Masters' negligence claim is independent of its breach of contract claim.[22] Masters also asserts that, even if the batching process was properly disclosed, Devos was negligent in the way it created the batches and tracked products through the returns process. Because Masters alleges that Devos breached duties independent of the parties' contract, the economic loss doctrine does not apply.[23]

    E.    *Masters Has Sufficiently Pled Fraudulent Inducement.*

Finally, Devos argues that Masters has not sufficiently pled its fraudulent inducement claim. To prevail on its claim, Masters must show "sufficient evidence of: (1) a false representation of fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of falsity of the representation or utter disregard for its truthfulness; (3) an intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely, and (5) injury proximately caused by the reliance."[24] Here, Masters specifically alleges that Devos falsely represented that it would pay Masters the refunds generated by its products. In fact, Devos knew all along that it would pay Masters only a proportionate share of a larger "batch" of products that included products belonging to others. Devos also represented that it charged "no hidden fees" and that its fees were "all inclusive." Devos' written materials falsely stated that its fees were based on the actual refunds received, not ERV. None of these statements were true, and Devos knew they were false when it made them. Masters alleges that it relied on Devos' false claims and that it was damaged as a result.

---

[22] Amended Complaint at ¶¶ 24, 71.
[23] *Onyx Envtl. Servs., LLC, supra.*
[24] *Mesaros v. Firstenergy Corp.*, 2005 U.S. Dist. LEXIS 22558 (N.D. Ohio 2005) *quoting Metropolitan Life Ins. Co. v. Triskett III, Inc.*, 97 Ohio App.3d 228, 235, 646 N.E.2d 528 (1994).

7

Devos' statements can hardly be deemed "puffery" as they claim the existence of objectively provable facts. "Puffery" is defined as "exaggerated blustering or subjective boasting upon which no reasonable consumer would rely."[25] It was entirely reasonable for Masters to rely upon Devos' statements of objective facts; Devos was not merely claiming to be the "best" or "lowest cost" reverse distributor. Unlike puffery, Devos' affirmative statements about its business practices were specific and easily capable of verification. They were also false. At this stage of the case, Masters is not required to plead anything more.

### III. Conclusion

Apparently unable to defend its actions on the merits, Devos has repeatedly sought to derail Masters' claims by misrepresenting the allegations against it or by claiming that it cannot be liable under various legal theories. The facts, however, are essentially uncontested and, eventually, Devos will have to face them. This Court should not condone these repeated delay tactics and should overrule Devos' motion so the parties can complete discovery and prepare for trial.

Respectfully Submitted,

s/Richard T. Lauer
**Richard T. Lauer (OH Bar #0063467)**
Trial Attorney for Plaintiff
8695 Seward Road
Fairfield, OH 45011
Telephone: 513-619-8038
Email: rlauer@mastersrx.com

---

[25] *Allied Erecting and Dismantling Co., Inv. V. Genesis Equip. and Mfg., Inc.,* 649 F.Supp.2d 702, 725-26 (N.D. Ohio 2009).

8

<u>Certificate of Service</u>

I hereby certify that on December 23, 2015, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy of the foregoing document was also served via email on the following:

Paul J. Cosgrove, Esq.
pcosgrove@ulmer.com

Alyson Terrell, Esq.
aterrell@ulmer.com

Joshua Klarfeld, Esq.
jklarfeld@ulmer.com

                                      **s/Richard T. Lauer**
                                      Richard T. Lauer